UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| JOHN DOE,<br><br>*Petitioner*,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>*Respondent*. | No.: 24-1362<br><br>**Petition for Review**<br><br>**PUBLIC COPY<br>MATERIAL UNDER SEAL REDACTED AND FILED IN SUPPLEMENTAL PETITION** |

## PETITION FOR REVIEW

Pursuant to Section 21F of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-6(f), 17 C.F.R. § 240.21F-13, and Federal Rule of Appellate Procedure 15, notice is hereby given that Petitioner ▮▮▮▮▮▮▮▮▮▮ (Claimant #3), petitions the United States Court of Appeals for the District of Columbia Circuit for review of the Securities and Exchange Commission's Order Determining Whistleblower Award Claims (Rel. No. 101451, File No. 2025-5) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) entered on October 28, 2024 ("Order").

Accompanying this Petition is Petitioner's Motion for Leave to Proceed Under a Pseudonym and to File Under Seal Any Information that Might Tend to

Reveal Petitioner's Identity, which seeks leave for Petitioner to proceed in this appeal as John Doe and to file under seal and establish procedures for filing under seal any information that could reasonably tend to reveal Petitioner's identity. Attached as Exhibit 1 to this Petition is a redacted public version of the Order. An unredacted, non-public version of both the Order and this Petition containing the sealed omitted material will be filed under seal pursuant to this Court's requirements in Circuit Rule 47.1(d)(1).

Dated: November 26, 2024

Respectfully submitted,

*/s/ William B. Adams*

William B. Adams
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Alex Van Dyke
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
300 West 6th St., Suite 2010
Austin, TX 78701
(737) 667-6100

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I, William B. Adams, hereby certify that on this 26th day of November, 2024, a copy of the foregoing Petition for Review was served via FedEx on the following:

Office of the General Counsel
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549

N. Creola Kelly
Chief, SEC Office of the Whistleblower
SEC Office of the Whistleblower (c/o ENF-CPU)
14420 Albemarle Point Place, Suite 102
Chantilly, VA 20151-1750


Dated: November 26, 2024         */s/ William B. Adams*
                                 William B. Adams
                                 Counsel for Petitioner

# EXHIBIT 1

UNITED STATES OF AMERICA

before the

SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 101451 / October 28, 2024

WHISTLEBLOWER AWARD PROCEEDING
File No. 2025-5

___

In the Matter of the Claims for Awards

in connection with

Redacted<br>
Redacted<br>
Redacted<br>
<br>
Redacted<br>
Redacted<br>
Redacted

___

**ORDER DETERMINING WHISTLEBLOWER AWARD CLAIMS**

The Claims Review Staff ("CRS") issued Preliminary Determinations recommending the denial of the whistleblower award claims submitted by Redacted ("Claimant 2") and Redacted ("Claimant 3") (collectively "Claimants") in connection with the above-referenced covered actions (the "Covered Actions"). Claimant 2 and Claimant 3 filed timely responses contesting the preliminary denials.[1] For the reasons discussed below, the CRS's recommendations are adopted and the award claims of Claimant 2 and Claimant 3 are denied.

## I. Background

### A. The Covered Actions

The Commission brought enforcement actions Redacted, including the above-referenced Covered Actions. The Commission found that the respondents had violated Redacted provisions of the Securities Exchange Act of 1934*** Redacted

---

[1] The CRS also recommended the denial of the award applications of one other claimant ("Claimant 1") who did not contest the Preliminary Determinations. Accordingly, the Preliminary Determinations with respect to Claimant 1 became the Final Order of the Commission through operation of Exchange Act Rule 21F-10(f), 17 C.F.R. § 240.21F-10(f).

<sup>Redacted</sup>

<sup>Redacted</sup>, in violation of the federal securities laws, and <sup>Redacted</sup>. Among other relief, the Commission ordered that the respondents pay <sup>Redacted</sup> <sup>Redacted</sup> The Office of the Whistleblower ("OWB") posted Notices for the Covered Actions on the Commission's public website inviting claimants to submit whistleblower award applications within 90 days. Claimants filed timely whistleblower award claims.

### B. The Preliminary Determinations

The CRS issued Preliminary Determinations recommending that the Claimants' award claims be denied because their information did not lead to the success of the Covered Actions. The CRS determined that the Commission investigation that led to the bringing of the Covered Actions was not opened based on information provided by Claimants. Further, Claimants' information was not received or used by the staff handling the Covered Actions (the "Covered Actions Investigation"), and those staff members otherwise had no contact with the Claimants.

### C. Claimants' Responses to the Preliminary Determinations

Claimants 2 and 3 submitted timely written responses contesting the Preliminary Determinations. Claimant 2 contends in his/her reconsideration request that he/she had sent the Commission numerous emails showing that <sup>Redacted</sup> <sup>Redacted</sup> and that SEC Enforcement staff acknowledged receiving these emails and, in fact, reached out to Claimant 2 to follow-up on these allegations. Claimant 2 asserts that, given the relevance of this information to the matters being investigated by the Commission, it must have been used by the staff and significantly contributed to the success of the Covered Actions.

Claimant 3 argues in his/her reconsideration request that Claimant 3's contributions to an earlier Commission enforcement action against <sup>Redacted</sup> (the "Other Entity") for <sup>Redacted</sup> was a "pivotal catalyst" and "foundation" for the Commission's opening of the Covered Actions Investigation. Claimant 3 asserts that his/her internal whistleblowing to the Other Entity led the Other Entity to self-report these violations to the Commission which, in turn, led the Commission to open an investigation into the Other Entity (the "Other Entity Investigation") and, ultimately, with the assistance of Claimant 3's later detailed tip and other information, including sworn testimony, led to the success of the Commission's enforcement action against the Other Entity (the "Other Entity Action").[2] Claimant 3 notes that one of the staff declarations in the record specifically stated the Covered Actions Investigation was opened when staff assigned to a third investigation discovered, in response to an investigative subpoena of the Other Entity, the existence of <sup>Redacted</sup> <sup>Redacted</sup>

---

[2] The Commission issued a final order awarding Claimant 3 a <sup>Redacted</sup> whistleblower award for his/her assistance in the Other Entity Action.

<sup>Redacted</sup>. Claimant 3 argues that this discovery, along with, to a lesser extent, information the staff learned from news coverage and conversations with other SEC attorneys, showed that the Other Entity was not the only <sup>Redacted</sup> <sup>Redacted</sup>. Claimant 3 maintains, however, that this declaration failed to disclose the key impact Claimant 3's contributions to the Other Entity Investigation had on the decision to open the Covered Actions Investigation, noting that while the declarant proposed the opening of the Covered Actions Investigation, the declarant was not the person who actually authorized the opening of the investigation. Claimant 3 asserts that the record needs to include a sworn declaration from the person(s) who did authorize the opening of the Covered Actions Investigation and that this declaration would show the staff's awareness of the critical importance of the Other Entity's self-report and the information Claimant 3 subsequently provided to the Other Entity Investigation in the decision to open the Covered Actions Investigation. Claimant 3 also argues that the reason the Other Entity <sup>Redacted</sup> <sup>Redacted</sup> was because the Other Entity <sup>Redacted</sup> <sup>Redacted</sup> as a direct result of Claimant 3 having reported his/her allegations to the Other Entity.

Claimant 3 further argues that, even if the Covered Actions Investigation staff did not receive his/her information, Claimant 3's information should, nevertheless, be credited as having satisfied the "led to" requirements of Rule 21F-4(c)(3),[3] which credits a whistleblower who reports original information through an entity's internal compliance procedures with the information the entity then provides the Commission based on the whistleblower's information and/or the results of the entity's investigation initiated in response to the whistleblower's information.[4] Claimant 3 asserts that the information the Commission received from the Other Entity's self-report should be credited to Claimant 3 under the provisions of this rule and, given the purported importance of the self-report to the decision to open the Covered Actions Investigation, Claimant 3 should be deemed to have provided information that led to the success of the Covered Actions.

Claimant 3 additionally contends that he/she is entitled to awards for the Covered Actions since the Other Entity Action, for which Claimant 3 received a whistleblower award (the "Other Entity Action Award"), shares "the same nucleus of operative facts" with the Covered Actions and thus, pursuant to Exchange Act Rule 21F-4(d)(1), 17 C.F.R. § 240.21F-4(d)(1), is deemed to be the same action for purposes of determining whistleblower award eligibility for the Covered Actions. Claimant 3 disputes the CRS's determination that the Other Action did not arise from the same nucleus of operative facts as the Covered Actions because the Other Action involved different time periods and different actors than those involved in the Covered Actions. Claimant

---

[3] Exchange Act Rule 21F-4(c)(3), 17 C.F.R. § 240.21F-4(c)(3).

[4] Claimant 3 disputes the CRS's determination that he/she did not qualify under this provision because Claimant 3 provided the information to the Commission more than 120 days after providing it to the Other Entity. Claimant 3 asserts that he/she did provide the Commission with information within 120 days after providing it to the Other Entity. Claimant 3 requests that, if he/she were deemed to have not provided information to the Commission within 120 days of providing it to the Other Entity, the Commission waive the 120-day requirement because of extraordinary circumstances, namely that he/she was retaliated against by the Other Entity and the failure of Claimant 3's then-attorney to alert Claimant 3 to the 120-day requirement for filing a TCR.

3 argues that, in fact, the Other Action and the Covered Actions "constitute one and the same action" and that Claimant 3, therefore, is eligible to receive a whistleblower award for the Covered Actions based on his/her contributions to the Other Action.

Claimant 3 also contends that the [Redacted] was based on Claimant 3's whistleblowing, that Claimant 3's information established the "full dimension and context of the misconduct.," and that the Commission used the Other Entity Action as the "template" for, and his/her "information contributed to the process, findings [Redacted]" in, the investigations and enforcement actions that followed the Other Entity Action.

Claimant 3 next asserts that the Commission's press release announcing the Other Entity Action specifically notes that [Redacted] [Redacted] [Redacted], and since Claimant 3 provided important information that helped the Commission to bring the Other Entity Action (for which the Commission awarded him/her the Other Entity Action Award), Claimant 3 should also receive credit for the investigation that resulted in the bringing of the Covered Actions.

Claimant 3 also points to the fact that one of the supervisors of an investigation that resulted in the bringing of the Other Entity Action, and who attended Claimant 3's sworn testimony in that investigation, is also listed as a supervisor in the press release that announced the Commission enforcement actions brought against [Redacted] [Redacted]. Claimant 3 contends that this supervisor must have transmitted to the staff that opened the Covered Actions Investigation the issues Claimant 3 raised in his/her testimony and helped approve, shape, and assist with the decision to open the investigation.

Next, Claimant 3 argues that he/she should receive an award because Claimant 3's information caused the news coverage of [Redacted] [Redacted], which contributed to the staff's decision to open the Covered Actions Investigation.

Finally, Claimant 3 argues that the materials he/she received in response to Claimant 3's request for the record materials are insufficient and should be supplemented with additional materials.[5]

---

[5] Among the materials that Claimant 3 requests be made a part of the record are: (1) the identity of all SEC personnel who viewed or received copies of Claimant 3's tip; (2) all internal and external communications from SEC personnel who implemented and approved the Covered Actions Investigation, including the SEC's chairman, the Director of the Division of Enforcement and other senior Commission officials; (3) the identity of the Commission personnel who [Redacted] [Redacted]; (4) whether [Redacted] were based on the Other Entity Action, and whether these personnel were familiar with Claimant 3's information; (5) SEC records of quarterly case review meetings, other staff meetings or communications, investigative plans and Hub System reports that reference Claimant 3's information; and (6) whether any SEC commissioner reviewed the Covered Actions preliminary determination in advance of it being issued.

## II. Analysis

To qualify for an award under Section 21F of the Exchange Act, a whistleblower must voluntarily provide the Commission with original information that leads to the successful enforcement of a covered action.[6] Original information will be deemed to lead to a successful enforcement action if either: (i) the original information caused the staff to "commence an examination, open an investigation . . . or to inquire concerning different conduct as part of a current examination or investigation" and the Commission brought a successful action based in whole or in part on conduct that was the subject of the original information;[7] or (ii) the conduct was already under examination or investigation, and the original information "significantly contributed to the success of the action."[8] In determining whether a whistleblower's information "significantly contributed" to the success of the action, the Commission will consider whether the information was "meaningful" in that it "made a substantial and important contribution" to the success of the covered action.[9] For example, the Commission will consider a claimant's information to have significantly contributed to the success of an enforcement action if it allowed the Commission to bring the action in significantly less time or with significantly fewer resources, or to bring additional successful claims or successful claims against additional individuals or entities.[10]

As an initial matter, we note that the record includes several sworn declarations from the Enforcement staff, which we credit,[11] including a declaration prepared by the staff attorney who proposed the opening of, and worked on, the Covered Actions Investigation, two declarations by a senior Enforcement attorney (one of which was prepared in response to contentions raised by Claimant 3 in his/her reconsideration request) who was one of the supervisors of the Covered Actions Investigation and who reviewed the first declarant's proposal and was consulted on opening the Covered Actions Investigation, a declaration from another attorney assigned to the Covered Actions Investigation, and a declaration from a senior Enforcement Attorney who supervised the Other Entity Investigation, as well as portions of the Covered Actions Investigation, including the bringing of one of the Covered Actions. Based on our review of the record, including the multiple declarations, we find that neither Claimant 2 nor Claimant 3 provided information that led to the success of the Covered Actions.

---

[6] Exchange Act Section 21F(b)(1), 15 U.S.C. § 78u-6(b)(1).

[7] Exchange Act Rule 21F-4(c)(1), 17 C.F.R. § 240.21F-4(c)(1).

[8] *See* Exchange Act Rule 21-F-4(c)(2), 17 C.F.R. § 240.21F-4(c)(2).

[9] Order Determining Whistleblower Award Claims, Exchange Act Rel. No. 90922 (Jan. 14, 2021) at 4; *see also* Order Determining Whistleblower Award Claims, Exchange Act Rel. No. 85412 (Mar. 26, 2019) at 9 (same).

[10] Exchange Act Rel. No. 85412 at 8-9.

[11] The whistleblower rules contemplate that the record upon which an award determination is made shall consist of, as relevant here, sworn declaration(s) provided by the relevant Commission staff, in addition to the publicly available materials related to the Covered Action, the claimant's tip, the claimant's award application, and any other materials timely submitted by the claimant in response to the Preliminary Determination. *See* Exchange Act Rule 21F-12(a), 17 C.F.R. § 240.21F-12(a).

Both Claimants suggest that because their information concerned the same sort of misconduct that was found to have occurred in the Covered Actions, their information must have been used by the responsible Enforcement staff that investigated and worked on the Covered Actions. However, the standard for award eligibility is not what the staff would have or could have done in hypothetical circumstances, but, rather, what impact a claimant's information actually has on the investigation.[12] That the Claimants' information bears a factual nexus to the findings in the Covered Actions, and that Claimant 3's information was important to the success of the Other Entity Action, does not mean that their information "led to" the success of the Covered Actions. Rather, the record, including multiple sworn staff declarations, supports the conclusion that neither Claimant provided information to the Commission that caused the opening of the Covered Actions Investigation or significantly contributed to the Covered Actions Investigation or the success of the Covered Actions.

### A. Contentions Specifically Raised by Claimant 2

Claimant 2's award applications note that Claimant 2 had submitted four tips to the Commission via the Commission's Tips, Complaints, and Referrals system ("TCR System") between ⟨Redacted⟩.[13] The record reflects Enforcement staff closed each of these submissions with an "No Further Action" ("NFA") disposition[14] and that none of these tips were received or reviewed by the Covered Actions Investigation staff. Regarding Claimant 2's assertion that the Enforcement staff acknowledged receiving Claimant 2's information and reached out to Claimant 2, a staff declaration affirms that a staff attorney on a separate investigation from the Covered Actions Investigation did receive one of Claimant 2's tips and did communicate with Claimant 2 about these allegations. However, the declaration states that the staff attorney did not share this tip or any information from Claimant 2 with the Covered Actions Investigation staff.[15] Rather, the declaration confirmed that this tip, like Claimant 2's other three

---

[12] Order Determining Whistleblower Award Claims, Rel. No. 99670 (March 5, 2024); Order Determining Whistleblower Award Claim, Release No. 34-98655 (Sept. 29, 2023); Order Determining Whistleblower Award Claim, Rel. No. 34-97408 (May 1, 2023); Order Determining Whistleblower Award Claim, Rel. No. 34-96657 (Jan. 13, 2023).

[13] The TCR System is the Commission's electronic database which records and stores information received from whistleblowers and others about potential securities law violations and records staff action taken with regard to tips, complaints, and referrals ("TCRs") entered into the system.

[14] An "NFA" disposition indicates that the staff will not take any additional steps with respect to a TCR unless subsequent information leads staff to reopen or reexamine that TCR.

[15] The staff attorney noted that, after receiving Claimant 2's tip, he/she requested that Claimant 2 send the staff further information about Claimant 2's allegations. According to the staff attorney, and not disputed by Claimant 2, Claimant 2 did not write back until more than two years later stating that Claimant 2 did have additional information. In the interim however, the staff had concluded that Claimant 2's complaint alleged violations of another agency's (the "Other Agency") rules and was not sufficiently related to the staff's programmatic priorities. The staff attorney stated that, after contacting the Other Agency to confirm that it had opened an inquiry into the matter, the staff closed the review of Claimant 2's tip on that basis with an NFA disposition. According to the staff attorney, receiving Claimant 2's email two years later did not change the staff's earlier determination that it was not going to pursue Claimant 2's allegations.

6

tips, was closed with an NFA disposition and that Claimant 2's tip was not forwarded to the Covered Actions Investigation staff or to anyone else at the Commission who was working on investigations of broker-dealer practices.

B.  **Contentions Specifically Raised by Claimant 3**

Claimant 3's argument that he/she shared information with Other Entity Investigation staff about ~~Redacted~~ , does not change the fact that the Other Entity Investigation staff did not share this information with the staff that opened the Covered Actions Investigation. Nor, as noted, did the staff that opened the Covered Actions Investigation receive Claimant 3's information from any other source. While one of the supervisors of the Other Entity Investigation also supervised portions of the Covered Actions Investigation, including the bringing of one of the Covered Actions, and thus did review Claimant 3's information and attended Claimant 3's sworn testimony in connection with the Other Entity Investigation, this supervisor provided a sworn declaration attesting that no information from Claimant 3 was used in, or had any impact on, the charges brought by the Commission in the Covered Action he/she supervised  The supervisor further attested that, to the best of the supervisor's recollection, Claimant 3 did not provide information to the Other Entity Investigation staff showing that ~~Redacted~~ ~~Redacted~~ . Other sworn staff declarations also state that the Covered Actions Investigation staff that worked on and brought the Covered Actions did not receive Claimant 3's information.

Moreover, Claimant 3 does not contend, and the record does not show, that Claimant 3 ~~Redacted~~ that were the subject of the Covered Actions. In response to Claimant 3's assertion that the staff declarations were deficient because they did not include a declaration from the supervisor(s) who approved the opening of the Covered Actions Investigation, which, Claimant 3 argues, would have shown that the decision to open the Covered Actions Investigation was "shaped by [the staff declarant's] supervisors' knowledge of [Claimant 3's] information" and "inevitably influenced by awareness of [Claimant 3's] information," OWB obtained a supplemental sworn declaration from the declarant's supervisor and, as noted, from a supervisor of the Other Entity Investigation (who also supervised portions of the Covered Actions Investigation, including the bringing of one of the Covered Actions) to address Claimant 3's assertions. The declarant's supervisor confirmed the statements in the supervisor's first declaration that the decision to open the Covered Actions Investigation was not based on any information that the staff received from Claimant 3 nor from information learned from the Other Entity self-report.[16] And, as noted above, the Other Entity Investigation

---

[16] The supervisor confirms that, like the declarant, he/she was aware that the Other Entity had sent a self-report to the Commission but was not aware of the specific details of the self-report. In addition, the supervisor states that, at the time of the conception and opening of the Covered Actions Investigation, the supervisor, like the first declarant, was not aware of Claimant 3's TCR or of the existence of its underlying factual allegations and did not become aware that Claimant 3 had submitted his/her whistleblower complaint to the Commission until well after the opening of the Covered Actions Investigation.

Both declarants note that they had limited discussions with staff from the Other Entity Investigation prior to the opening of the Covered Actions Investigation. The supervisor notes that these discussions were general in nature

7

supervisor stated that no information from Claimant 3 was used in, or had any impact on, the charges brought by the Commission in the Covered Action he/she supervised. The supervisor also attested that Claimant 3 did not provide information to the Other Entity Investigation staff showing that ~~Redacted~~ ~~Redacted~~.

This is not to denigrate Claimant 3's contribution to the success of the Other Entity Action, a contribution that we recognized with an order directing the payment of a whistleblower award to Claimant 3.[17] However, the issue here in assessing Claimant 3's eligibility to receive a whistleblower award is not the importance of Claimant 3's contribution to the Other Entity Investigation and the Other Entity Action but, rather, whether Claimant 3's submission of information to the Commission caused the staff to open the Covered Actions Investigation, inquire concerning different conduct as part of a current examination or investigation or provided information that significantly contributed to the success of the Covered Actions. We conclude that Claimant 3's information did not cause the staff to open the Covered Actions Investigation, inquire concerning different conduct as part of a current examination or investigation or significantly contribute to the Covered Actions Investigation or the success of the Covered Actions.

We also reject Claimant 3's argument that he/she is entitled to awards for the Covered Actions, since the Covered Actions share "the same nucleus of operative facts" with the Other Entity Action. While the Other Entity Action concerned similar types of misconduct as that determined to have occurred in the Covered Actions, the misconduct in the Other Entity Action involved different actors and somewhat different time periods[18] than that involved in the Covered Actions.[19] Thus, we find that the Covered Actions did not arise from the same nucleus of operative facts as the Other Entity Action.

---

and did not delve into the specific information that that staff had received or learned from the Other Entity. Moreover, the supervisor attests that during these discussions, the Other Entity Investigation staff did not tell the supervisor about ~~Redacted~~ ~~Redacted~~. The other declarant states that his/her discussions with the Other Entity Investigation staff prior to the opening of the Covered Actions Investigation only helped to inform his/her understanding of ~~Redacted~~ at the Other Entity in relation ~~Redacted~~ and that he/she did not learn about ~~Redacted~~ from the Other Entity Investigation staff.

[17] *See supra* note 2.

[18] While the Other Entity Action and the Covered Actions concerned misconduct that occurred from ~~Redacted~~ ***, the misconduct in the Other Entity Action continued through ~~Redacted~~ and the misconduct in the Covered Actions continued through ~~Redacted~~.

[19] *See* Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 98340 (Sept. 11, 2023) at 4 ("While the Associated Actions involved similar misconduct related to the Covered Action, the time periods of the misconduct in each case were different and they each involve different actors [and] [a]s a result, the Associated Actions do not arise from the same nucleus of operative facts and should not be aggregated together or with the Covered Action for purposes of making an award determination under Rule 21F-4(d)(1)"); Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 96324 (Nov. 16, 2022) at 2 ("The record demonstrates that the Covered Action and the Second Action involved different and unrelated parties and transactions, which Claimant

We further reject Claimant 3's assertion that the Commission used the resolution of the Other Action as a template for ~~Redacted~~ the Covered Actions. As discussed, the information Claimant 3 submitted to the Commission and used in the Other Entity Investigation was not shared with the staff that opened the Covered Actions Investigation and was not helpful to the staff that worked on the Covered Actions. Thus, whether the Other Action served as a template for ~~Redacted~~ the Covered Actions – an issue the Commission need not decide – the information provided by Claimant 3 did not lead to the success of the Covered Actions.

Regarding Claimant 3's argument that he/she is eligible for a whistleblower award under Exchange Rule 21F-4(c)(3) [20] for the information the Other Entity provided the Commission as a result of Claimant 3 having first reported internally to the Other Entity, Claimant 3 does not meet the requirements of this rule. Rule 21F-4(c)(3) provides that if:

* a whistleblower reports original information through an entity's internal whistleblower, legal or compliance procedures before or at the same time he or she reports it to the Commission;

* the entity provides the Commission with the whistleblower's information or with the results of an investigation initiated in response to the whistleblower's information;

* the information provided by the entity to the Commission "led to" successful enforcement under the criteria of Rule 21F-4(c)(1) or (c)(2) discussed above; and

* the whistleblower submits the same information to the Commission within 120 days of providing it to the entity,

then the whistleblower will receive full credit for the information provided by the entity as if the whistleblower had provided the information to the Commission.

While Claimant 3 satisfied the first two requirements of Rule 21F-4(c)(3) – he/she reported internally through the Other Entity's internal whistleblower, legal or compliance procedures before or at the same time he/she reported it to the Commission, and the Other Entity provided the Commission with the results of an investigation initiated in response to Claimant 3's information – Claimant 3 did not satisfy the third requirement of the rule – that the information the entity provided to the Commission satisfied the "led to" requirements of either paragraph (c)(1) (caused the Commission to commence an examination, open an investigation, reopen an investigation that the Commission had closed, or to inquire concerning different conduct as part of a current examination or investigation), or (c)(2) of the rule (as relevant here, significantly

---

concedes. The Second Action also was brought more than two years after the Covered Action. That the two enforcement proceedings allege similar violations of law does not mean that they arose from the same nucleus of operative facts.").

[20] Exchange Act Rule 21F-4(c)(3), 17 C.F.R. § 240.21F-4(c)(3).

9

contributed to the success of the action). First, several staff declarations attested that no information from Claimant 3 was used in, or had any impact on, the charges brought by the Commission in the Covered Actions. Second, the Other Entity Investigation supervisor also attested that Claimant 3 did not provide information to the Other Entity Investigation staff showing that [Redacted] [Redacted]. Finally, both the staff attorney who proposed the opening of the Covered Actions Investigation and that staff attorney's supervisor stated in their respective declarations that, while they were aware at the time the Covered Actions Investigation was opened that the Other Entity Investigation had been opened a year earlier based on a self-report the Other Entity had sent the Commission, they were not aware of the specific details of the self-report. While the supervising attorney had discussions with staff who worked on the Other Entity investigation, including the Other Entity Investigation supervisor, both supervisors attested that the discussions were "general in nature" and did not extend to [Redacted] [Redacted]. Rather, both the staff attorney and that attorney's supervisor attested that the Covered Actions Investigation was opened as a result of the Covered Actions Investigation staff's receipt, in response to its investigative subpoena to the Other Entity,[21] ***[Redacted]*** [Redacted], as well as their discussions with other SEC attorneys (none of whom provided them with information from Claimant 3 or detailed information about the Other Entity's self-report), and in reading news coverage indicating that similar conduct had taken place at [Redacted] [Redacted]. Thus, Claimant 3's tip and the Other Entity's self-report did not cause the opening of the Covered Actions Investigation, nor, as multiple staff declarations attest, did it contribute to the Covered Actions Investigation itself or to the success of the Covered Actions.[22]

Regarding Claimant 3's assertion that he/she should receive credit for the information and assistance he/she provided that contributed to the Other Entity Action since that action led to the Commission investigating [Redacted] [Redacted] the subjects of the Covered Actions, the Other Entity Investigation supervisor stated that that Claimant 3 did not provide information to the Other Entity Investigation staff showing [Redacted] [Redacted]. Further, the declarations from the staff who participated in the decision to open the Covered Actions Investigation and the supervisor of the Other Entity Investigation state that the Other Entity Investigation staff did not share Claimant 3's information with the staff that opened the Covered Actions Investigation nor advise the staff that opened the Covered Actions Investigation about [Redacted] [Redacted].

---

[21] This subpoena was not issued by the staff on the Other Entity Investigation and was separate and apart from that investigation.

[22] Regarding the fourth requirement of Rule 21F-4(c)(3) – that the whistleblower submit the same information to the Commission within 120 days of providing it to the entity – Claimant 3 argues that the Commission should waive or grant an exemption for his/her arguable failure to have submitted the information within 120 days of providing it to the entity. We do not address this contention since the third requirement of Rule 21F-4(c)(3) was not met and, thus, the rule is inapplicable regardless of whether a waiver or exemption were granted.

Indeed, the Other Entity Investigation supervisor stated that he/she did not recall telling the staff who participated in the opening of the Covered Actions Investigation about [Redacted] [Redacted] [Redacted], nor did he/she recall mentioning Claimant 3 to them or the information Claimant 3 provided to the Other Entity Investigation staff.

We also reject Claimant 3's argument that he/she should receive an award because Claimant 3's information caused news coverage of [Redacted], which contributed to the decision to open the Covered Actions Investigation. Exchange Act Rule 21F-4(c) requires that information must be submitted to the Commission, not the news media, to qualify as information that led to the success of a covered action.

Finally, Claimant 3's argument regarding the alleged incompleteness of the record and his/her need to review additional materials is inapposite, and we deny Claimant 3's request for additional documents. The whistleblower rules permit an award claimant to request and to receive a copy of the materials that formed the basis of the Preliminary Determination[23] but, as we have previously pointed out, "the whistleblower rules do not authorize a claimant to go on a fishing expedition to . . . obtain copies of the SEC's entire investigative file."[24] Similarly, the rules do not permit a claimant to investigate, or cause the Commission to investigate, how the staff utilized the information it received from a claimant.[25] The evidence in the record demonstrates that Claimant 3 requested and then was properly sent the record materials that formed the basis for the Preliminary Determinations.[26] Claimant 3 is not entitled to any extra-record materials.

---

[23] The Rules state that the record upon which an award determination is made shall consist of sworn declarations provided by the relevant Commission staff, in addition to the publicly available materials related to the particular covered action, the claimant's tip, the claimant's award application, and any other materials timely submitted by the claimant in response to the Preliminary Determination. *See* Exchange Act Rule 21F-12(a), 17 C.F.R. § 240.21F12(a). There is no basis to disregard Rule 21F-12(a) and expand the record to include any of the additional documents requested by Claimant 3. *See* Exchange Act Rule 21F-12(b), 17 C.F.R. § 240.21F-12(b) ("These rules do not entitle claimants to obtain from the Commission any materials (including any pre-decisional or internal deliberative process materials that are prepared exclusively to assist the Commission in deciding the claim) other than those listed in paragraph (a) of this section [*i.e.*, Rule 21F 12(a)]."

[24] Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 94647 (Apr. 8, 2022) at 5; Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 88973 (May 29, 2020) at 5. *See also* Exchange Act Rule 21F-12(b), 17 C.F.R. § 240.21F-12(b) (noting that the whistleblower rules "do not entitle claimants to obtain from the Commission any materials (including any pre-decisional or internal deliberative process materials that are prepared exclusively to assist the Commission in deciding the claim) other than those listed in paragraph (a) of this section").

[25] Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 94647 (Apr. 8, 2022) at 5.

[26] The record materials include redacted versions of four staff declarations (which were redacted to protect the confidentiality of the other claimants), Claimant 3's Form WB-APP, and Claimant 3's TCR. Because Claimant 3 had previously submitted the Form WB-APP and the TCR to the Commission, those documents were omitted from the record package that OWB sent to Claimant 3; however, the Form WB-APP and the TCR are still part of the record.

## III. Conclusion

Accordingly, it is hereby ORDERED that the whistleblower award applications of Claimant 2 and Claimant 3 in connection with the Covered Actions be, and they hereby are, denied.

By the Commission.

Vanessa A. Countryman
Secretary